**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 23, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

EMMITT BICKFORD,

    Plaintiff - Appellant,

v.

RYAN HENSLEY, in his individual
capacity; OSAGE COUNTY SHERIFF, in
his official capacity,

    Defendants - Appellees.

No. 19-5092
(D.C. No. 4:18-CV-00097-TCK-JFJ)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **MATHESON**, and **CARSON**, Circuit Judges.
_____

The Fourth Amendment generally requires the government to obtain an arrest

warrant based on probable cause before hauling a person off to jail. And if a state

actor violates that principle, he may be liable for false arrest under 42 U.S.C. § 1983.

That cause of action is, of course, subject to the affirmative defense of qualified

immunity—the key issue we consider today.

In this case, a police officer submitted generalized affidavits to a magistrate to

secure arrest warrants for forty-four alleged co-conspirators in a marijuana

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

distribution ring, including Plaintiff Emmitt Bickford.  On the strength of that affidavit, the magistrate issued an arrest warrant for Plaintiff and the officer subsequently arrested him.  Several of the allegations in the officer's affidavit, however, did not pertain to Plaintiff.

In fact, the officer only had reason to believe that Plaintiff may have been a marijuana user at the end of the distribution chain based on a year-old Facebook message between third-parties that the officer failed to mention in the affidavit.  So the officer arrested Plaintiff without any evidence that he had committed the charged conspiracy-related offenses.  And in Oklahoma, the jurisdiction where these events unfolded, an officer may not arrest an individual for simple use or possession of marijuana occurring outside of the officer's presence.  Plaintiff sued for false arrest and malicious prosecution.  But the district court granted summary judgment to the Defendants based on qualified immunity.

Our jurisdiction arises under 28 U.S.C. § 1291.  We reverse the district court's grant of summary judgment on Plaintiff's false arrest claim to Defendants on qualified immunity grounds.

I.

Deputy Ryan Hensley carried out the Osage County Sheriff's Office's investigation into a marijuana distribution ring in rural Oklahoma.  During the investigation, local prosecutors charged forty-four alleged co-conspirators, including Plaintiff, with conspiracy to distribute marijuana (Okla. Stat. Ann. tit. 63, § 2-408 and § 2-101) and using a computer to violate Oklahoma law (Okla. Stat. Ann. tit. 21,

2

§ 1958). Deputy Hensley prepared nearly identical affidavits to secure arrest warrants for each suspect. Each affidavit contained nine total statements, some of which focused on the supposed kingpin and others on the alleged actions of lower level co-conspirators. After a magistrate granted the warrant request on the strength of Deputy Hensley's affidavit, Deputy Hensley arrested Plaintiff. Over one year later, however, a court dismissed the charges against Plaintiff without prejudice at the prosecutor's request.

Following dismissal of the criminal charges, Plaintiff sued Deputy Hensley and the Sheriff in his official capacity for false arrest and malicious prosecution under 42 U.S.C. § 1983. Deputy Hensley asserted the affirmative defense of qualified immunity. Although Deputy Hensley did not include this information in his arrest warrant affidavit, the litigation below revealed that Deputy Hensley was aware of a brief Facebook Messenger conversation between third-parties concerning Plaintiff. In the message, a co-conspirator told the supposed kingpin that he "[g]ave Chaz a small dab the other night" and "he got so high." Plaintiff was colloquially known as Chaz, so Deputy Hensley interpreted the message to mean that Plaintiff used marijuana distributed through the conspiracy. Deputy Hensley conceded that this message supplied the only evidence linking Plaintiff to criminal activity.

Based in part on this concession, the district court determined that Deputy Hensley had included two false statements in his affidavit with reckless disregard for the truth. As the district court explained, Deputy Hensley lacked evidence to infer that Plaintiff assisted in the conspiracy via a computer or cell phone or that Plaintiff

3

conspired with others to purchase marijuana trafficked into Oklahoma. Upon considering the remaining contents of the affidavit, the district court determined that Deputy Hensley had violated Plaintiff's constitutional rights by arresting him without probable cause, but that Plaintiff's right was not clearly established. To that end, the district court believed that Deputy Hensley had probable cause to arrest Plaintiff for the uncharged offense of possessing marijuana based on the Facebook message (prohibited under Okla. Stat. Ann. tit. 63, § 2-402(B)(2)).

Accordingly, the district court granted qualified immunity to Deputy Hensley on Plaintiff's false arrest claim. Based on this reasoning, the district court also concluded that the Sheriff could not be subject to official capacity liability for the same claim. Finally, the district court granted summary judgment to both Defendants on Plaintiff's malicious prosecution claim, which Plaintiff does not discuss on appeal.[1] Plaintiff now appeals the district court's decision on his false arrest claim.

II.

We review de novo the district court's decision to grant summary judgment and must "view the evidence and draw inferences in the manner most favorable to the non-moving party." Lindsey v. Hyler, 918 F.3d 1109, 1113 (10th Cir. 2019) (citing Trask v. Franco, 446 F.3d 1036, 1043 (10th Cir. 2006) ("On appeal, we review the

---

[1] In other words, Plaintiff abandoned his malicious prosecution claim on appeal. We thus do not consider it. See Hamer v. City of Trinidad, 924 F.3d 1093, 1101 n.5 (10th Cir. 2019) (quoting United States v. Yelloweagle, 643 F.3d 1275, 1280 (10th Cir. 2011) (explaining that where an appellant "raises an issue before the district court but does not pursue it on appeal, we ordinarily consider the issue waived")).

4

award of summary judgment based on qualified immunity de novo.")). We uphold the district court's grant of summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

III.

Deputy Hensley contends that he is entitled to qualified immunity on Plaintiff's false arrest claim because he had arguable probable cause to arrest Plaintiff for at least one crime—possession of marijuana. "A warrantless arrest violates the Fourth Amendment unless probable cause exists to believe a crime has been or is being committed." Corona v. Aguilar, 959 F.3d 1278, 1282 (10th Cir. 2020). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." Id. (quoting Keylon v. City of Albuquerque, 535 F.3d 1210, 1216 (10th Cir. 2008)).

Although the parties devote much attention to how the district court parsed statements in Deputy Hensley's affidavit and the law in our circuit regarding arrests for uncharged offenses, our legal inquiry is quite simple. Today we consider whether Deputy Hensley had "arguable probable cause" to arrest Plaintiff based strictly on a Facebook message between third-parties indicating Plaintiff had used marijuana. See Kaufman v. Higgs, 697 F.3d 1297, 1300 (10th Cir. 2012) (explaining that an officer is entitled to qualified immunity if he had "'arguable probable cause' for an

5

arrest"). An officer does not have arguable probable cause to arrest if "it would have been clear to a reasonable officer that probable cause was lacking under the circumstances." Id. (citation omitted).

Where, as here, an officer asserts the affirmative defense of qualified immunity, Plaintiff must satisfy a familiar two-part test. Lindsey, 918 F.3d at 1113. Plaintiff must demonstrate that: (1) the defendant violated a constitutional right and (2) the right was clearly established at the time of the violation. Id. We first consider whether Deputy Hensley committed a constitutional violation before addressing the clearly established prong of the qualified immunity test.

A.

We conclude that Defendant Hensley lacked arguable probable cause to arrest Plaintiff for either charged offense. As to the computer crime, the affidavit does not provide, and Deputy Hensley does not otherwise identify, any facts indicating that Plaintiff used a computer system at all, let alone in a manner that violated Oklahoma law. Rather, Deputy Hensley's sole evidence against Plaintiff arose from a cryptic Facebook message between third-parties. So Deputy Hensley did not have arguable probable cause to arrest Plaintiff for the charged computer crime.

As to conspiracy to distribute marijuana, the affidavit does not provide, and Deputy Hensley does not otherwise allege, any facts suggesting that Plaintiff entered into a conspiracy to distribute marijuana.[2] To the contrary, the Facebook message

_____

[2] Of course, a criminal conspiracy requires, that "[1] two or more persons agreed to violate the law, [2] that the Defendant knew at least the essential objectives

6

only provides the remotest of evidence that Plaintiff used marijuana. The message

states that an alleged conspirator gave someone named "Chaz" a "small dab." Even

if Deputy Hensley believed that Plaintiff was "Chaz" and that he purchased the

marijuana, our law distinguishes between "consumers, who do not plan to redistribute

drugs for profit," and "distributors, who do intend to redistribute drugs for profit,

thereby furthering the objective of the conspiracy." United States v. Ivy, 83 F.3d

1266, 1285–86 (10th Cir. 1996).[3] "Casual transactions with persons involved in a

conspiracy are insufficient to establish that critical connection—one who merely

purchases drugs or property for personal use from a member of a conspiracy does not

thereby become a member of the conspiracy." Id. at 1286 (quoting United States v.

Horn, 946 F.2d 738, 741 (10th Cir. 1991) (internal quotation marks, alterations, and

citation omitted)). Because the evidence cited by Deputy Hensley demonstrates that

Plaintiff was, at most, a marijuana buyer for personal use, Deputy Hensley did not

have arguable probable cause to arrest Plaintiff for the charged conspiracy crime

relating to the distribution of marijuana.

---

of the conspiracy, [3] that the Defendant knowingly and voluntarily became a part of it, and [4] that the alleged coconspirators were interdependent." United States v. Ivy, 83 F.3d 1266, 1285 (10th Cir. 1996) (internal quotation marks, alterations, and citation omitted).

[3] A dab is a single "hit or toke from rolled marijuana," which we understand to be a small quantity that can only evidence personal use. Dab, UrbanDictonary.com, https://www.urbandictionary.com/define.php?term=dab&page=39 (last visited Aug. 25, 2020).

7

Next, we consider whether Defendant Hensley may escape liability based on the notion that he could have arrested Plaintiff for the uncharged offense of marijuana possession.[4] In this case, the only evidence that Deputy Hensley identified is the Facebook conversation occurring over one year prior to Plaintiff's arrest. Both the form and content of the Facebook message render it particularly unreliable here.

First, the Facebook message between third-parties constitutes hearsay. Although the fact that hearsay evidence would be inadmissible at trial "does not make it unusable as a source of probable cause for a warrantless arrest," Cortez v. McCauley, 478 F.3d 1108, 1118 (10th Cir. 2007), longstanding legal principles generally consider hearsay statements to be inherently unreliable, United States v. Lozado, 776 F.3d 1119, 1121 (10th Cir. 2015). Second, the Facebook message did not mention Plaintiff by name,

_____

[4] We observe that Oklahoma law generally does not allow an officer to conduct a warrantless arrest for a misdemeanor—including simple possession of marijuana, Okla. Stat. Ann. tit. 63, § 2-402(B)(2)—unless the offense was "committed or attempted in the officer's presence" Okla. Stat. Ann. tit. 22, § 196. Neither the Supreme Court nor this circuit, however, has ever "held that the Fourth Amendment prohibits warrantless arrests for misdemeanors not committed in the presence of arresting officers." United States v. Fisher, 241 F. Supp. 2d 1154, 1162 (D. Kan. 2002), aff'd, 99 F. App'x 190 (10th Cir. 2004) (unpublished). In fact, our sister circuits have consistently held the opposite. See, e.g., Woods v. City of Chicago, 234 F.3d 979, 995 (7th Cir. 2000) (noting that the circuits "have uniformly held or stated that the common law 'in the presence' rule is not part of the Fourth Amendment" (collecting cases)). Although the states are free to impose greater restrictions on arrests beyond probable cause that an arrestee committed a crime, "their citizens do not thereby acquire a greater federal right." Id. (citation omitted). We therefore must reject Plaintiff's argument that his warrantless arrest for simple possession of marijuana committed outside of an officer's presence is, in and of itself, a federal constitutional violation.

8

but merely referred to someone named "Chaz," who Deputy Hensley *thinks* is Plaintiff. The lack of specific identification of Plaintiff in an uncorroborated conversation that did not even involve Plaintiff further undermines the ability of the message to establish probable cause of any offense. See Wesley v. Campbell, 779 F.3d 421, 430 (6th Cir. 2015) (describing "uncorroborated hearsay allegations [that] were too unreliable to form the basis for probable cause"). Because Deputy Hensley arrested Plaintiff without any evidence supporting probable cause to arrest for any offense—charged or uncharged—Plaintiff satisfies the first prong of the qualified immunity test of establishing a constitutional violation.

B.

To defeat qualified immunity, Plaintiff must also demonstrate that his right to be free from unlawful arrest was clearly established at the time of the violation. Lindsey, 918 F.3d at 1113. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (per curiam) (internal quotation marks and citation omitted). Stated another way, "a preexisting Supreme Court or Tenth Circuit decision, or the weight of authority from other circuits, must make it apparent to a reasonable officer that the nature of his conduct is unlawful." Carabajal v. City of Cheyenne, 847 F.3d 1203, 1210 (10th Cir. 2017).

In deciding whether a precedent provides fair notice, the Supreme Court has directed courts "not to define clearly established law at a high level of generality." Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (citation omitted).

9

Instead, "the clearly established law must be particularized to the facts of the case." White v. Pauly, 137 S. Ct. 548, 552 (2017) (per curiam) (internal quotation marks and citation omitted). Although there need not be "a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." Kisela, 138 S. Ct. at 1152 (quoting White, 137 S. Ct. at 551).

Here, we are able to identify prior cases where we held that an officer acting under similar circumstances violated an individual's Fourth Amendment rights. First, "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," the affiant is not entitled to qualified immunity for executing that arrest warrant. United States v. Leon, 468 U.S. 897, 923 (1984) (citing Franks v. Delaware, 438 U.S. 154 (1978)). Because Deputy Hensley included false statements that did not pertain to Plaintiff with reckless disregard for the truth in his generalized affidavit, Plaintiff had a clearly established right to be free from arrest based on that defective warrant. See DeLoach v. Bevers, 922 F.2d 618, 621–22 (10th Cir. 1990) (reasoning that where a "judicial finding of probable cause is based solely on information the officer knew to be false or would have known to be false had he not recklessly disregarded the truth, not only does the arrest violate the fourth amendment, but the officer will not be entitled to [qualified] immunity" (quoting Olson v. Tyler, 771 F.2d 277, 282 (7th Cir. 1985))).

10

Additionally, the law is clear that an "officer violates an arrestee's clearly established Fourth Amendment right to be free of unreasonable seizure if the officer makes a warrantless arrest without probable cause." Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir. 2002). Because Deputy Hensley lacked arguable probable cause to arrest Plaintiff without a warrant for the uncharged offense of marijuana possession occurring outside of the officer's presence, Plaintiff's right to be free from that warrantless arrest was also clearly established. See Salmon v. Schwarz, 948 F.2d 1131, 1137 (10th Cir. 1991) (denying an agent's motion for qualified immunity because the agent conducted an arrest with "an incomplete picture of the circumstances relevant as to whether probable cause existed for [the suspect's] arrest"). Accordingly, Deputy Hensley is not entitled to qualified immunity on Plaintiff's false arrest claim.[5]

---

[5] Deputy Hensley argued that the law is not clearly established in our circuit or by way of clear consensus among our sister circuits as to "whether an officer who knowingly or recklessly included false statements on a warrant affidavit can be held liable for false arrest *despite having had probable cause to arrest the plaintiff without a warrant for a different offense* not identified in the affidavit." Arizmendi v. Gabbert, 919 F.3d 891, 899 (5th Cir. 2019) (but, in determining that the officer committed a constitutional violation, opining that the court "cannot conclude that an officer can deliberately or recklessly misstate or omit facts in a warrant affidavit to procure a warrant to arrest someone for a specific crime, then escape liability by retroactively constructing a justification for a warrantless arrest based on a different crime" (id. at 903)), cert. denied, 140 S. Ct. 220 (2019). We do not need to decide that question today because, unlike the officer in Arizmendi, we determine that Deputy Hensley did not have probable cause to arrest Plaintiff for an uncharged offense in this case.

C.

Finally, Plaintiff also brought his false arrest claim against the Sheriff in his official capacity. The district court granted summary judgment to the Sheriff based exclusively on the premise that Defendant Hensley was entitled to qualified immunity. Because we reverse the district court's qualified immunity determination, we likewise reverse the district court's grant of summary judgment to the Sheriff on this claim.[6]

IV.

For the foregoing reasons, we REVERSE the district court's grant of summary judgment to Defendants on Plaintiff's false arrest claim and REMAND for further proceedings consistent with this Order.

Entered for the Court

Joel M. Carson III
Circuit Judge

---

[6] We do not express any view on the merits of Plaintiff's official capacity claim at summary judgment. We observe that Plaintiff alleged unconstitutional policies and procedures, failure to train, and failure to supervise against the Sheriff in violation of the Fourth Amendment. Because the district court did not analyze, and the parties did not argue here, whether this claim should proceed if Defendant Hensley is not entitled to qualified immunity, we will allow the district court to first consider those arguments should the parties wish to present them. See Pauly v. White, 874 F.3d 1197, 1219 n.7 (10th Cir. 2017) (clarifying that we "are a court of review, not of first review" (citation omitted)). We do, however, note that qualified immunity "is available only in suits against officials sued in their personal capacities, not in suits against governmental entities or officials sued in their official capacities." Starkey ex rel. A.B. v. Boulder Cnty. Soc. Servs., 569 F.3d 1244, 1263 n.4 (10th Cir. 2009).